IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CLYDE R. DeBORD,**

      **Plaintiff,**

v.                                                                                             **CIV 03-0846**

**JOANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for A Rehearing *(Doc. 10)*. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion *(Doc. 11)*, Defendant's response to the motion *(Doc. 12)*, and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter, "Record" or "R"). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion **DENIED**.

### **I.  Procedural History**

Plaintiff, Clyde R. DeBord, filed an application for Disability Insurance Benefits on May 21, 2001. *(R. at 81-83.)* In connection with his application, he alleged a disability since May 1, 1997, due to bipolar disorder and joint deformity in both feet. *(R. at 97.)* Plaintiff's application was denied at the initial and reconsideration levels. *(R. at 58, 59.)*

The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on September 18, 2002. *(R. at 23-57.)* Plaintiff was represented at the hearing by an attorney. *(R. at 23.)* On November 14, 2002, the ALJ issued his decision in which he made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. § 404.1520: (1) claimant met the non-disability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through the date of this decision; (2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has an impairment or a combination of impairments considered "severe"; (4) these medically determinable impairments do not meet or medically equal one of the listed impairments; (5) claimant's allegation regarding his limitations are not totally credible; (6) all medical opinions in the record were carefully considered regarding the severity of claimant's impairments; (7) claimant has the following residual functional capacity: to perform simple repetitive unskilled tasks prior to January, 2002; as of January, 2002, he developed a significant right side tremor; (8) claimant is unable to perform any of his past relevant work; (9) claimant is a "younger individual between the ages of 45 and 49"; (10) claimant has a "limited education;" (11) claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case; (12) claimant has the residual functional capacity to perform a significant range of heavy work; (13) although claimant's exertional limitations do not allow him to perform the full range of heavy work, there are a significant number of jobs in the national economy that he could perform; (14) claimant was not under a "disability" as defined in the Social Security Act at any time through the date of this decision. *(R. at 18-19.)*

After the ALJ issued his decision on November 14, 2002, Plaintiff filed a request for review. *(R. at 9.)* On June 13, 2003, the Appeals Council issued its decision denying Plaintiff's request for

review *(R. at 5-7.)*, making the ALJ's decision the final decision of the Commissioner.  Plaintiff subsequently filed his complaint for court review of the ALJ's decision on July 18, 2003.  *(Doc. 1.)*

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y of Health & Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *See, e.g., Sisco v. U. S. Dep't of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).

A claimant has the burden of proving his or her disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993); 42 U.S.C. § 423(d)(1)(A).  The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. §§ 404.1520 and 416.920.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity (hereinafter "RFC"), age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988).

### III.  Plaintiff's Age, Education, Work Experience and Medical History

At the time of the hearing, Plaintiff was forty-six years old *(R. at 27, 81.)* and, therefore, is defined as a "younger individual" within the regulations.  20 C.F.R. § 404.1563.  He has limited education, finishing only the tenth grade of high school and a vocational class in general auto maintenance. *(R. at 35.)*  During the fifteen year period prior to the ALJ's decision, Plaintiff worked as a security guard, custodian, taxi driver and fry cook. *(R. at 35-36, 98, 122.)*

Plaintiff's medical records indicate he consulted George M. Gould, M.D. in September, 1996 following a "bout of severe depression with suicidal ideation." *(R. at 125.)*  Dr. Gould assessed his condition as manic depression and prescribed Lithium[1] and Prozac[2]. *(Id.)* Plaintiff returned to consult Dr. Gould several times for medication refills. *(R. at 124.)*  Plaintiff's records indicate he next consulted Joseph Aragon, M.D. from November, 2000 through September, 2001 for neck and back pain following a motor vehicle accident. *(R. at 140-148.)*

---

[1]Lithium is a naturally occurring substance.  As a medication, lithium reduces chemicals in the body that cause excitation or mania.  Lithium is used to treat manic episodes of manic-depressive illness.  Lithium helps to prevent and control symptoms of mania such as hyperactivity, rushed speech, poor judgment, reduced need for sleep, aggression, and anger. *(Webmd.)*

[2]Prozac (fluoxetine) is in a class of drugs called selective serotonin re-uptake inhibitors.  Fluoxetine affects chemicals in the brain that may become unbalanced and cause depression or mood disturbances, eating disorders, or obsessive or compulsive disorders.  Fluoxetine is used to treat depression, obsessive-compulsive disorders, panic disorder, and bulimia. *(Webmd.)*

On September 7, 2001, Plaintiff consulted Rene Gonzales, a DDS[3] examining physician for a psychiatric consultation and evaluation. *(R. at 134-137.)* Plaintiff reported to Dr. Gonzales that he was diagnosed by a psychiatrist in California (Dr. Larkin) with bipolar disorder. *(R. at 134.)* But he last saw Dr. Larkin in 1992 and his primary care physician is now monitoring his medications. *(Id.)* Plaintiff has not provided any medical records from Dr. Larkin. Dr. Gonzales concluded that Plaintiff's mental status examination indicated he was in a depressed mood, but was not suicidal or homicidal. *(R. at 136.)* In reference to the psychiatric/psychological source statement of ability to do work-related activities, Dr. Gonzales stated Plaintiff had only mild limitations or no limitations. *(Id.)* Dr. Gonzales recommended intensive individual therapy and medication management with a psychiatrist and predicted Plaintiff would be able to find a job if he followed these recommendations and resolved his physical problems. *(Id.)* Dr. Gonzales gave Plaintiff a Global Assessment of Functioning (GAF) score of "50 at the present time and 65 for the past year."[4]  *(Id.)*

On September 25, 2001, Plaintiff consulted Eugene Toner, M.D., a DDS examining physician for an evaluation of his physical impairments. *(R. at 126-133.)* Dr. Toner's assessment indicates Plaintiff has a tremor, "possibly parkinsonian [sic] in origin;" slight-to-moderate degenerative changes to fingers of both hands; and Kohler's disease. *(R. at 128.)* Dr. Toner stated that

> [f]rom a clearly physical point of view, this claimant does not have much that would keep him from doing things that we consider normal for his age, size, and sex. I do feel that his tremor needs to be more thoroughly evaluated. It is at rest only. It does not affect his ability to use that hand at least during this examination.

*(Id.)*

---

[3]DDS (Disability Determination Services) is the state agency with which the Social Security Administration has contracted to develop the medical record in Social Security claims at the initial and reconsideration levels. *See* 20 C.F.R. § 404.1519s.

[4]A GAF score is a measurement of the clinician's judgment of an individual's psychological, social, and occupational functioning. *(DSM-IV-TR at 32)*. A GAF score of 50 (within the range of 41 to 50) indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *(Id. at 34)*. A GAF score of 65 (within the range of 61 to 70) indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and having some meaningful interpersonal relationships. *(Id.)*

Dr. Toner also includes remarks concerning Plaintiff's ankle joint deformity (Kohler's disease).

> This claimant's Kohler's disease according to the textbook should be self-limiting and usually is only painful during adolescence for about a 15-month period of time even without treatment. I do not have any evidence here if there is any deformity to his feet. If his Kohler's disease is still active it may interfere with his ability to stand or walk for more than 2-3 hours during the day, but I think it is stretching it some. I have marked in my form that I have no medical evidence to indicate this claimant is unable to do things that would be considered normal.

*(Id.)* In the medical source statement of ability to do work-related activities, Dr. Toner finds no physical limitations for Plaintiff. *(R. at 132-133.)*

On October 3, 2001, a DDS physician completed a Psychological Technique Review Form for Plaintiff. *(R. at 149-162.)* This standard check-list form indicated that Plaintiff had a non-severe affective disorder (possible bipolar) and a non-severe substance abuse disorder (in remission). *(R. at 152, 157.)* In the "B" criteria rating of functional limitations, the physician found only mild limitations in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. *(R. at 159.)* There were no repeated episodes of decompensation. *(Id.)* In addition to the check-list, the DDS physician included a narrative which included a diagnosis of "Bipolar-Affective Disorder possible." *(R. at 161.)*

On January 14, 2002, Anna Vigil, M.D. conducted a neurological examination of Plaintiff to assess his tremors. *(R. at 180-181.)* Dr. Vigil stated "Mr. DeBord has an extrapyramidal type tremor with other motor symptoms involving his right side. This may well represent idiopathic Parkinsonism." *(R. at 181.)* Dr. Vigil prescribed a low dose of Sinemet[5] and wanted to follow up in six weeks. *(Id.)* As of August, 2002, Plaintiff continued to consult Dr. Aragon for back pain, and medication refills of Prozac and Sinemet. *(R. at 183.)*

---

[5]Sinemet (carbidopa and levodopa) is a medication used to treat Parkinson's disease. Parkinson's disease is believed to be related to low levels of a chemical called dopamine in the brain. Carbidopa and levodopa are used to treat the stiffness, tremors, spasms, and poor muscle control associated with Parkinson's disease. *(Webmd.)*

### IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step five of the five-part sequential analysis for determining disability. *(R. at 18-19.)* At step five, the burden of proof shifts to the Commissioner to show that Plaintiff is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gatson*, 838 F.2d at 446.

Plaintiff alleges the ALJ made three errors in denying his claim for benefits because the decision is not supported by substantial evidence, the Commissioner failed to apply the correct legal standards, and the Commissioner failed to carry her burden of proof. *(Doc. 11 at 1.)* Specifically, Plaintiff argues that the ALJ:  (1) improperly evaluated the severity of Plaintiff's mental impairment at step two; (2) improperly assessed Plaintiff's residual functional capacity ("RFC") by finding Plaintiff has the ability to perform simple, repetitive, unskilled tasks; and (3) failed to include all of Plaintiff's impairments in the hypothetical question to the vocational expert. *(Doc. 11 at 3.)*

Defendant argues that the ALJ applied the correct legal standards and his decision that Plaintiff was not disabled is supported by substantial evidence. *(Doc. 12.)*

### A.  Severity of Mental Impairment at Step Two

At step two, the ALJ must determine if a claimant has a medically determinable impairment or combination of impairments severe enough to significantly limit the claimant's ability to do basic work activities.  20 C.F.R. § 404.1521.  Basic work activities include physical functions (walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling); seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b)  In assessing mental impairments, the ALJ must also determine the degree of limitation in a claimant's activities of daily living; ability to maintain social

functioning; any deficiencies in concentration, persistence or pace; and any episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).

In this case, Plaintiff alleges the ALJ improperly evaluated the severity of Plaintiff's mental impairment by relying only on a functional assessment and Plaintiff's failure to seek treatment. *(Doc. 11 at 4.)*  The Court disagrees.  The ALJ notes the paucity of medical records substantiating Plaintiff's claimed diagnosis; his failure to seek any psychiatric treatment, therapy or counseling since 1992; his intermittent use of Prozac; and the assessment of the DDS consultative examiner stating Plaintiff has, at most, mild limitations in his abilities to do work-related activities. *(R. at 15.)*

Plaintiff alleges the ALJ did not consider Plaintiff's testimony concerning his limitations, especially his inability to adapt to changes in the workplace. *(Doc. 11 at 6.)*  However, the ALJ found, after reviewing the record as a whole, that Plaintiff's testimony was not totally credible and "substantially discount[ed] the claimant's subjective complaints." *(R. at 16)*  Plaintiff argues the GAF score of 50 assigned by Dr. Gonzales supports his claim of severe mental impairment *(Doc. 11 at 7.)*, but Dr. Gonzales also assigned Plaintiff a GAF score of "65 for the past year." *(R. at 136.)*  The Tenth Circuit held, in *Seymore v. Apfel*, that "a GAF score of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."  *Seymore v. Apfel*, 131 F.3d 152, 1997 WL 755386, *2 (10th Cir. 1997) (unpublished opinion).  Dr. Gonzales found only mild limitations in Plaintiff's work-related abilities. *(R. at 136.)*  The Court finds the ALJ's decision, that Plaintiff failed to establish that he has a mental impairment which has had more than a minimal effect on his ability to work and, therefore, is not severe, is supported by substantial evidence.

### B.  RFC Assessment

Plaintiff alleges the ALJ improperly assessed his RFC by finding Plaintiff has the ability to perform simple, repetitive, unskilled tasks because the ALJ failed to assess how Plaintiff's bipolar disorder impacts his functioning. *(Doc. 11 at 8.)* However, the ALJ found at step two that Plaintiff failed to establish that his mental or emotional condition (bipolar disorder) had more than a minimal effect on his ability to work and, therefore, was not severe. *(R. at 15.)* The ALJ was not required to assess the impact of a non-severe impairment (bipolar disorder) on Plaintiff's RFC.

Residual functional capacity is defined in the regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 404.1545 and *Social Security Ruling 96-8p*. In this case, the ALJ considered the medical opinions, Plaintiff's reported daily activities and hobbies, and the reports of the consultative psychiatrist and physician. *(R. at 15-16.)* In finding that Plaintiff retained the capacity to perform simple, repetitive, unskilled tasks, the ALJ noted that the

> consultative psychiatrist concluded that the claimant had only mild limitations related to his emotional complaints, none of which would preclude the performance of simple repetitive work on a sustained basis (Ex. 3F). *[R. at 134-137.]* The consultative examiner concluded that the claimant had no exertional limitations from his physical complaints (Ex. 2F). *[R. at 126-133.]*

*(R. at 16.)* (Citations to *Record* added). The Court finds that the ALJ properly assessed Plaintiff's RFC and based his decision on substantial evidence in the record.

### C. Hypothetical Questions to Vocational Expert

Plaintiff alleges that the ALJ failed to include all of Plaintiff's impairments in the hypothetical questions posed to the vocational expert (hereinafter "VE") and, therefore, the ALJ cannot rely on the VE's testimony to constitute substantial evidence. *(Doc. 11 at 9.)* The Plaintiff specifically objects to the ALJ's failure to include Plaintiff's alleged limitation of becoming easily overwhelmed. *(Id.)* The Court disagrees with Plaintiff's characterization of the required inclusions in a hypothetical

9

question to a VE.  According to *Evans v. Chater*, an ALJ need only present those limitations that the ALJ finds are established by the evidence.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) ("the ALJ's failure to include in his hypothetical inquiry to the VE *any* limitation in this regard violated the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record.") (emphasis in original).  The objective evidence in the record does not support Plaintiff's claim of being easily overwhelmed; it appears only in Plaintiff's testimony which the ALJ found to be not totally credible.  *(R. at 16, 17.)*

The Court finds that the ALJ did pose hypothetical questions to the VE that included all of Plaintiff's limitations that were supported by evidence in the record and, therefore, the ALJ properly relied on the VE's testimony as substantial evidence to support his decision.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is support by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's Motion to Reverse and Remand for A Rehearing *(Doc. 10)* is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

_Lourdes a. Martinez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**